**UNITED STATES v. MASTERSON.**

**Criminal No. 1311–48.**

United States District Court, District of Columbia.

Dec. 8, 1952.

Charles M. Irelan, U. S. Atty., and Frederick G. Smithson, Asst. U. S. Atty., Washington, D. C., for plaintiff.

James C. Toomey, Washington, D. C., for defendant.

KEECH, District Judge.

This case is before the Court on the defendant's fourth motion to vacate sentence and set aside the judgment convicting him of assault with a dangerous weapon.

The record shows that the defendant was arrested on September 4, 1948, shortly after the assault occurred. Thereafter, being unable to make bond, he was confined continuously prior to and during his trial, and was committed immediately upon conviction. On November 2, 1948, an indictment was returned by the grand jury, a copy of which was served on the defendant personally at the Jail on November 3. On November 5, the defendant was arraigned and pleaded not guilty, at which time counsel

of the defendant's choice entered his appearance. At the time of arraignment, the trial date was fixed as November 23, 1948. On November 23, the trial occurred, resulting in a jury verdict of guilty. On December. 10, 1948, the defendant was sentenced. Throughout the trial and at the time of sentence, the defendant was represented by the same counsel of his own selection.

On December 29, 1948, the defendant filed the first of a series of motions, drawn by him personally, in which he attacked the validity of his arrest, indictment, trial, conviction, and sentence. This motion was based on allegations of illegal arrest and search; illegal detention prior to hearing; invalidity of the indictment; and failure to produce at the trial the weapon alleged to have been used in the assault. The motion was argued in open court and denied, the defendant being represented at the request of the court by his trial attorney. Subsequently, on January 14, 1949, the defendant filed a motion for new trial, based on substantially the same grounds. This motion also was set down for hearing in court and denied after argument. At the time of this hearing the defendant's original attorney withdrew and the defendant was represented by another attorney of his own selection. The second attorney then filed a motion for reduction of sentence, which was heard and denied.

On February 17, 1949, the defendant filed a petition for writ of habeas corpus, naming the Attorney General as respondent (H. C. 3507), which was dismissed on April 14, 1949, by Judge Pine. On May 12, 1949, Judge McGuire denied a motion to amend the petition.

On April 8, 1949, the defendant again filed a motion to vacate sentence and set aside the judgment, reiterating his contentions in the prior motions and adding charges that the witnesses who testified before the grand jury and at the trial committed perjury, and that the police permitted the defendant's apartment to be destroyed, damaged, and rifled after defendant's arrest, This motion was denied without oral hearing, under the provision of 28 U.S.C. § 2255 that "The sentencing court shall not be required to entertain a second or succes-

sive motion for similar relief on behalf of the same prisoner."

On April 27, 1949, the defendant filed a second petition for writ of habeas corpus, naming the Superintendent of the District of Columbia Jail as respondent (H.C. 3534). This petition was dismissed and the rule to show cause discharged on May 13, 1949, by Judge McGuire.

On November. 16, 1951, the defendant filed another motion under 28 U.S.C. § 2255, alleging as grounds:. (1) that the defendant had been deprived of the right to testify in his own behalf at the trial; (2) that defendant was denied effective assistance of counsel at the trial, in that he was not granted sufficient time for conference and preparation, and that counsel failed to protect his rights; and (3) that defendant was denied the right to subpoena witnesses to testify in his behalf at the trial. No facts were alleged in support of these conclusions. At this time the defendant also filed an affidavit of bias and prejudice against the trial judge. Both the motion to vacate sentence and the affidavit of bias and prejudice were denied without hearing on November 21, 1951. On December 6, 1951, this court denied defendant's application to appeal in forma pauperis from the action of November 21.

Thereafter, the defendant applied to the United States Court of Appeals for the District of Columbia for leave to appeal in forma pauperis from the action of November 21, 1951. This proceeding terminated in an order dated August 14, 1952, denying the defendant's application for leave to appeal in forma pauperis, "without prejudice to petitioner's right to move again in the United States District Court by an amended motion to vacate sentence setting forth with sufficient detail the facts upon which the claim for relief is predicated." For the first time, on February 29, 1952, in a motion filed in the Court of Appeals, the defendant made the detailed allegations on which he bases the motion now pending.

The amended motion to vacate sentence and set aside judgment now before this court, filed August 26, 1952, was referred to the trial judge on October 27, 1952.. Pur-

suant to the defendant's request for appointment of counsel to argue his motion, the court named an able and experienced member of the bar. The motion was set down for argument and testimony on November 14, 1952, at which time, after the case was called, the defendant represented to the court that he had pending a petition for writ of habeas corpus and requested that the hearing on the motion be postponed for a sufficient period of time to permit disposition of the habeas corpus proceeding. Thereupon, the motion was continued to November 26. On that date it was reported to the court that an application by defendant to file a petition for writ of habeas corpus in forma pauperis had been denied on November 13, by Judge Youngdahl, and that no further action had been taken in the matter. The court then devoted approximately three and one-half hours to the hearing of testimony in connection with the motion and full argument thereof.

Considering the grounds of the amended motion to vacate in order, Paragraph 1 alleges:

"Prior to his trial, defendant had been afforded conference with his attorney for no more than five (5) minutes. Counsel visited defendant only twice at the District of Columbia Jail prior to his trial and those two (2) occasions were predominately taken with counsel's instructions to defendant to solicit him business in the District of Columbia Jail. Prior to the trial, defendant's wife made every possible effort to have defendant's former counsel confer with him at the District of Columbia Jail, without success."

The testimony adduced at the hearing showed that defendant was represented by counsel of his own selection, who had successfully defended him on other occasions, including a charge of simple assault in the Municipal Court related to the offense of which defendant was convicted in this court; that counsel conferred with defendant and his wife on a number of occasions, both as to the Municipal Court case and the District Court case, and on four occasions visited the defendant at the Jail, as shown by its records. Defendant's acquittal of the charge in Municipal Court which grew out of the same altercation as the charge here involved, indicates counsel's knowledge of the facts and preparation for trial in both cases.

Paragraph 2 of the amended motion alleges:

"At the time of the trial, on November 27, 1948, before being taken to the Court-room, defendant requested the U. S. Marshal then on duty in the 'bull-pen' to contact his attorney, in order that defendant could confer with his attorney before going to trial. This request was denied, due to the fact that the trial was ready to commence. Prior to this, defendant had been afforded only five (5) minutes conference with counsel."

At the hearing on the motion, the marshal who brought the prisoner from the cell block to the courtroom at the time of trial testified that he heard no such request made, as did the other marshals who were on duty in the court on that occasion; and there was no corroboration of the defendant's statement.

Paragraph 3 of the amended motion alleges:

"Defendant was not present at the time the jury was empannelled. During the course of the trial, defendant noted that he was acquainted with one of the jurors, whose name was, and is now, unknown to defendant, although he can be identified by defendant on sight. Defendant was given no opportunity to bring this to the attention of counsel."

It is the recollection of the marshals on duty at the trial, as testified by them, and of the court, that the defendant was present throughout the trial, including the impanelling of the jury. The record shows that the defendant was identified to the prospective jurors on the voir dire. The witnesses denied and there is no credible proof of the allegation that the defendant was given no opportunity to point out the juror whom defendant now claims he knew; and the marshals testified, corroborating the

court's recollection, that the defendant was seated immediately adjacent to his attorney at the counsel table throughout the trial and was in a position to speak to his attorney whenever he wished.

Paragraph 4 of the amended motion alleges:

"Defendant had requested his counsel to subpoena certain witnesses for their attendance at the trial. Upon entering the Court-room, defendant, scanning the court-room, noted that his main witness, one Earl Etue, was not present, nor were other witnesses present. Said Earl Etue was the party who had committed an assault upon the complainant, Donald Bushong, at the time of the alleged assault by defend-ant. Said Earl Etue was prepared to give this testimony. His testimony was vital to the defense."

The testimony of the trial counsel showed that the defendant gave him the name of the witness Etue prior to trial, but did not give him any information as to how he could be reached. It is now known that Etue was in and out of the District Jail on two occasions between the time of the assault and the defendant's trial, and that he is at present serving an eighteen-year sentence in another jurisdiction. However, there was no credible testimony that the defendant informed his attorney or even knew prior to the trial that Etue was confined at the Jail or that he furnished his attorney any address for Etue.

It is to be noted that in the defendant's first three motions to vacate sentence and two petitions for writ of habeas corpus no such allegation was made, but, on the contrary, in his petition for a writ of habeas corpus filed April 27, 1949, in which defendant complained of the delay between his arrest and trial and charged fraud on the part of the government in obtaining an unusually long continuance, the defendant stated under oath, "As a result of this fraud petitioner lost contact of witnesses vital to his defence."

The record of the trial shows that two witnesses were called and testified on behalf of the defendant.

Paragraph 4 further alleges:

"When defendant noted that his witnesses were not present, that they had not been subpoenaed, he informed the U. S. Marshal that he wished to speak to his attorney. This was to advise his attorney that he had no alternative but to testify on his own behalf. During the entire course of the trial, the Deputy U. S. Marshal was seated directly behind defendant, his legs astraddle the chair of defendant and was restraining defendant by holding the back of his belt. The Marshal ordered defendant to 'keep quiet', for fear of arousing the anger of the Court. Every attempt defendant made to speak to the Court or to his attorney was thwarted by said Marshal, during the entire course of the trial. A review of the Deputy U. S. Marshals on duty on that particular day will result in identification by defendant of the Marshal in question. At no time during the course of the trial did either the Court or counsel give defendant the opportunity to testify in his own behalf."

The marshals present in the courtroom at the trial testified that defendant was not restrained by holding on to his belt; that defendant was not told to keep quiet for fear of arousing the court's anger; that defendant was not thwarted in his attempts to speak to counsel, but, on the contrary, the defendant conferred with his counsel whenever he desired throughout the trial. Although all the marshals present in the courtroom at the trial were called as witnesses at the hearing on the motion, the defendant failed to identify any one of them as the person who restrained him.

Defendant's trial counsel testified that it was agreed that the defendant would not testify in his own behalf in view of his record. The wisdom of this course is borne out by defendant's voluminous criminal record, which dates from 1934 and contains convictions of many misdemeanors and felonies, including assault, carrying a dangerous weapon, and assault with a dangerous weapon.

Paragraph 5 of the amended motion alleges that:

"During the charge to the jury, the Court at no time instructed the jury as to why defendant had not taken the stand in his own behalf or that the jury was not to assume any prejudicial inferences because of his not taking the stand."

Defendant's trial counsel testified that it is his general practice to request that such an instruction not be given. While the defendant is entitled to the instruction if it be requested, it is the custom of many competent criminal lawyers to request that no reference be made in the charge to a defendant's failure to testify, believing such an instruction emphasizes the defendant's silence and has an unfavorable, rather than a favorable, effect on the jury's verdict. Although the record of the trial does not disclose any request in court that the instruction be omitted, the trial attorney must at some time, in court or in chambers, have made such a request, as it is the practice of this court to include the instruction unless counsel specifically asks that it not be given. At the conclusion of the charge, defendant's counsel announced that he was "satisfied."

Paragraph 6 of the amended motion alleges:

"At the time of sentencing, on December 10, 1948, defendant attempted to speak to the Court, in order to note an appeal, in which the foregoing questions would have been raised. However, defendant was immediately sentenced and taken from the Court-room, although defendant indicated, by gestulation, that he desired to speak."

The record shows that at the time of sentence the court accorded defendant's counsel an opportunity to speak in behalf of the defendant. The court denies that defendant attempted to speak or indicated a desire to do so. Further, defendant made no attempt to raise the "foregoing questions" until three years after his conviction, although he had been in court on a number of occasions during the interval.

From a review of the testimony adduced at the hearing, it is apparent that the defendant's allegations are not corroborated by any credible testimony, and are contradicted by the testimony of the marshals on duty in the courtroom at the trial, as well as by the court's own very clear recollection of the trial.

Defendant's attorney vigorously urged that the testimony of the marshals was based not on any independent recollection of the specific trial, but merely on what is customary at all trials. This was effectively refuted by the testimony of the marshal stationed immediately behind the prisoner during most of the trial, that he especially recalled the defendant and the trial because he was acquainted with the defendant's sister. It is the court's view that the other marshals who testified were likely to recall the handling of this particular prisoner, because of his appearance, demeanor, and attitude, as well as his repeated returns to the court subsequent to conviction.

Aside from the testimony of the marshals and recollection of the court, it is difficult to believe defendant's present allegations in view of the fact that he has filed three other motions to vacate the sentence and judgment and two petitions for writ of habeas corpus, all of which alleged lack of due process on many grounds, but on no occasion prior to November, 1951, three years after conviction, did defendant make any of the charges included in his pending motion, at least one of which is inconsistent with an earlier statement by him under oath.

It is significant that the defendant did not repeat in this court the allegation included in one of the papers filed by him in the Court of Appeals that he was not present when the jury returned its verdict.

Weighing the credibility of defendant's testimony by the usual criteria, his manner of testifying, his demeanor on the stand, whether he appeared to be a truth-telling individual, his ability to know and recall the facts to which he testified, his criminal record, and his interest in the outcome of the motion, the court finds defendant's testimony of no probative value.

It was apparent that the defendant's wife, who also appeared as a witness in support of the motion, was endeavoring to testify

in a manner which would be helpful to her husband; but many of the charges made by him were not within her knowledge, and some of the facts to which she testified did not coincide with the defendant's testimony.

Defendant cites in support of his motion Mason v. United States, 90 U.S.App.D.C. 1, 193 F.2d 23. This court does not dispute the principle followed in that decision, but holds it is inapplicable to the facts in the case at bar.

In view of the foregoing, the defendant's amended motion to vacate the sentence and set aside the judgment of conviction is denied.