Freddie L. **WESTON**

v.

C. Murray **HENDERSON**.

Civ. A. No. 5987.

United States District Court
E. D. Tennessee, N. D.

Nov. 15, 1967.

B. R. McGee, Knoxville, Tenn., for plaintiff.

Henry C. Foutch, Asst. Atty. Gen., State of Tenn., by John Gilbertson, Sp. Counsel to Atty. Gen., Knoxville, Tenn., for defendant.

## OPINION AS RENDERED FROM THE BENCH

ROBERT L. TAYLOR, District Judge.

Freddie L. Weston has filed a petition for writ of habeas corpus consisting of some 22 pages. The petition is so long and so involved that it is difficult to understand. As the Court interprets it, petitioner seeks to have vacated two sentences that were given him in 1954, at which time he was convicted in the Criminal Court of Knox County on two separate counts of robbery and was given consecutive sentences of from ten to twenty years. Each sentence was for five to ten years and to run consecutively, making a total of ten to twenty years.

In November, 1963, petitioner was released on parole. On September 25, 1964 he was convicted of the offense of armed robbery while on parole and given another sentence of not less than five years nor more than fifteen years, which was to take effect upon the expiration of the sentence received in 1954.

The answer of the defendant asserts that the date of expiration of the 1954 sentence is August, 1974. Petitioner says that the 1954 sentences are invalid because his constitutional rights were violated in the imposition of such sentences in the following particulars:

(a) That the then District Attorney, Hal Clements, Jr., as an inducement for his pleas of guilty to the charges contained in the indictment, promised him concurrent sentences and that he did not know until he had served eight years in the state penitentiary that such promise was breached and that he had received consecutive sentences.

Mr. Clements testified in effect that he made no such promise to the petitioner, that during the time he served as District Attorney for Knox County he never breached faith with any person who came before the Court for sentence or judgment.

Judge J. Fred Bibb, the then presiding judge, also testified, and stated in

substance that he had no independent recollection of the case but from an examination of the record he was convinced that he explained to the petitioner that he was receiving consecutive sentences on his pleas of guilty.

■ A preponderance of the evidence, therefore, shows, and the Court finds, that petitioner was not promised concurrent sentences by Attorney General Clements or any other representative of the Court as an inducement for his pleas of guilty to the two offenses.

(b) That he was coerced by the officers who arrested him to make the confessions.

Officer Ray Wilkerson is the only officer living who returned petitioner from Florida after he had been arrested by the officers in Florida. The officer who accompanied Officer Wilkerson on this trip is deceased.

Officer Wilkerson testified positively that soon after petitioner was arrested he confessed to the charges and took the officers to the place where the gun, used in committing the offense, was located.

Officer Wilkerson further stated that the petitioner advised him and the other officer that he wanted to get all of the offenses behind him at one hearing, and in the course of the conversation he confessed to the robbery of another taxicab driver which was made the basis of one of the indictments.

Petitioner in his testimony does not say that the officers mistreated him in any respect during their conversation with him.

■ The Court finds as a fact that the petitioner was not coerced in making confession to the crimes of robbery and in entering his pleas of guilty to those charges.

(c) That his constitutional rights were violated in that he agreed to take a polygraph test in relation to the charge of robbery and murder of a taxicab driver and that while in a state of fear he confessed to two other crimes of robbery of taxicab drivers.

■ The fact that petitioner confessed to other charges while taking a polygraph test does not make his confessions involuntary or inadmissible as evidence. This principle was announced by the Sixth Circuit Court of Appeals in the case of United States v. McDevitt, 328 F.2d 282.

In that case, the Court said in part:

"Appellant contends that his confession was the result of the polygraph test and therefore was inadmissible. * * * The present appeal, however, does not involve a case where the operator attempted to testify, as an expert, as to what was indicated by the polygraph test. Though the reported cases are few, it seems to be well established that the use of a lie detector in the process of interrogation does not render a subsequent confession involuntary or inadmissible. Tyler v. United States, 90 U.S.App.D.C. 2, 193 F.2d 24, cert. denied, 343 U.S. 908, 72 S.Ct. 639, 96 L.Ed. 1326. * * *" p. 284.

(d) That his constitutional rights were violated in that he did not have counsel at the preliminary hearing or during the trial.

■ Failure to have counsel during a preliminary hearing is not a denial of a constitutional right. State ex rel. Reed v. Heer, Tenn.Sup., 403 S.W.2d 310, 311; Dillard v. Bomar, 6 Cir., 342 F.2d 789.

■ (e) That he did not have counsel at the time he entered his plea of guilty in the Criminal Court of Knox County.

The judgments show that he did have counsel. Neither Judge Bibb nor Attorney General Clements has any independent recollection, whether he did or did not have counsel. Judge Bibb stated that, what he learned about the case at the time he tried the petitioner for the 1964 robbery leads him to believe that he did have counsel.

His case was tried long before Escobedo v. State of Illinois, 378 U.S. 478, 84 S.Ct. 1758, 12 L.Ed.2d 977 (1966),

and Miranda v. State of Arizona, 384 U.
S. 436, 86 S.Ct. 1602, 16 L.Ed.2d 694
(1966).

Petitioner's cases were also tried long
before Gideon v. Wainwright, 372 U.S.
335, 83 S.Ct. 792, 9 L.Ed.2d 799 (1963).

Counsel for the petitioner in this case
asserts that the *Gideon* case is retro-
active. The facts in the *Gideon* case
were entirely different from the facts in
the case in consideration.

Gideon asked the Court to appoint him
a lawyer, stating to the Court at the time
that he was without funds to employ
a lawyer. The trial court, under those
circumstances, refused Gideon's request
to appoint him a lawyer.

The Court said in that case, speaking
through Mr. Justice Black, that Gideon's
constitutional rights were violated and
his conviction void.

In the opinion of the Court, petition-
er's rights were not violated when he
entered pleas of guilty to the charges
contained in the two indictments in 1954.

■ This brings us to the 1964 con-
viction. In that case, petitioner was rep-
resented by counsel of his own choice—
Frank L. Flynn, Sr., Esq.

This Court takes judicial knowledge
of Mr. Flynn's experience and capabili-
ties as a trial lawyer. He is recognized
by the members of his profession as a
capable lawyer, and as evidence of their
respect for him he was elected and now
serves as President of the Knox County
Bar Association, and the Court is of the
opinion that petitioner was well repre-
sented in his 1964 trial.

(f) He claims that his constitutional
rights were violated in that trial in that
the rule was requested and granted and
was in effect during the trial but that
Officer Bunch violated the rule by talk-
ing to Witness Anderson during a recess
and after Anderson had testified for
some time.

This point was made the basis of as-
signment of error in the trial court and
was held to be without merit by Judge
Bibb. The point was pursued in the
Tennessee Supreme Court and again held
by that Court to be without merit.

■ In the opinion of this Court that
point addressed itself to the sound dis-
cretion of the trial court, and, as held by
the trial court and the Supreme Court,
petitioner's rights were not prejudiced
since Officer Bunch did not talk to the
Witness Anderson about anything to
which he testified before the Court re-
cessed.

Another point made in the 1964 trial
was that Assistant Attorney General
Garlington argued to the jury that peti-
tioner had been convicted of other crimes
and that this was highly prejudicial to
petitioner's rights.

The then experienced Trial Judge Bibb
was careful to point out to the jury that
petitioner was not being tried for other
offenses and that they should not per-
mit the argument of Garlington to preju-
dice his rights by references to the oth-
er offenses, that such references were
only pertinent for whatever bearing they
may have had on petitioner's credibility
as a witness.

Petitioner's counsel during this trial
was frank enough to state to the Court
that he could see no legal basis for the
assertion of a violation of a constitution-
al right of petitioner during the 1964
trial but that he wanted the Court to
pass on the question independently of
his views.

Another charge should be mentioned
which is contained in the petition but not
stressed during this trial; that is, that
the Attorney General willfully and know-
ingly and wantonly used perjured testi-
mony against the petitioner, presumably
in the 1964 trial as petitioner did not
have a trial on the 1954 charges except
the jury fixed his sentence after he en-
tered pleas of guilty and thereby ap-
proved his pleas of guilty.

■ There is no evidence that per-
jured testimony was used against peti-
tioner. The Court, therefore, finds that
this charge is without foundation.

The Court granted an evidentiary
hearing to petitioner because of his

charges that perjured testimony had knowingly been used against him and because of his charge that his confessions had been coerced and that Attorney General Clements had promised him concurrent sentences for his pleas of guilty when he received consecutive sentences. As heretofore indicated, petitioner has failed to prove any of these charges.

The Court, therefore, finds as a fact and concludes as a matter of law that the petition is lacking in merit. It is accordingly ordered that the petition be, and same hereby is, denied and petitioner is remanded to the custody of the state authorities.